UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TODD CURTIS WEST,

          Petitioner,

v.                             Case No. 3:20-cv-1361-HES-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

          Respondents.

_____

## ORDER

### I. Status

Petitioner Todd Curtis West, an inmate of the Florida penal system, initiated this action by filing a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1). Petitioner challenges a state court (Duval County, Florida) judgment of conviction for armed burglary with assault or battery. *See id.* Respondents filed a response (Response; Doc. 10), with exhibits (Resp. Exs.; Docs. 10-1 through 10-27). Petitioner filed a reply (Doc. 18). This action is ripe for review.

## II. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. *See Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" *Id.* (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" *Id.* (quoting *Hill v. Humphrey*, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. *See Marshall v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. *See Harrington v. Richter*, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the
> unexplained decision to the last related state-court
> decision that does provide a relevant rationale. It
> should then presume that the unexplained decision
> adopted the same reasoning.

*Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). The presumption may be
rebutted by showing that the higher state court's adjudication most likely
relied on different grounds than the lower state court's reasoned decision, such
as persuasive alternative grounds that were briefed or argued to the higher
court or obvious in the record it reviewed. *Id.* at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars
relitigation of the claim unless the state court's decision (1) "was contrary to,
or involved an unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States;" or (2) "was based on
an unreasonable determination of the facts in light of the evidence presented
in the State court proceeding." 28 U.S.C. § 2254(d); *Richter*, 562 U.S. at 97–98.
The Eleventh Circuit describes the limited scope of federal review pursuant to
§ 2254 as follows:

> First, § 2254(d)(1) provides for federal review for
> claims of state courts' erroneous legal conclusions. As
> explained by the Supreme Court in *Williams v. Taylor*,
> 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000),
> § 2254(d)(1) consists of two distinct clauses: a
> "contrary to" clause and an "unreasonable application"
> clause. The "contrary to" clause allows for relief only
> "if the state court arrives at a conclusion opposite to
> that reached by [the Supreme] Court on a question of

3

law or if the state court decides a case differently than
[the Supreme] Court has on a set of materially
indistinguishable facts." *Id.* at 413, 120 S. Ct. at 1523
(plurality opinion). The "unreasonable application"
clause allows for relief only "if the state court identifies
the correct governing legal principle from [the
Supreme] Court's decisions but unreasonably applies
that principle to the facts of the prisoner's case." *Id.*

Second, § 2254(d)(2) provides for federal review for
claims of state courts' erroneous factual
determinations. Section 2254(d)(2) allows federal
courts to grant relief only if the state court's denial of
the petitioner's claim "was based on an unreasonable
determination of the facts in light of the evidence
presented in the State court proceeding." 28 U.S.C. §
2254(d)(2). The Supreme Court has not yet defined §
2254(d)(2)'s "precise relationship" to § 2254(e)(1),
which imposes a burden on the petitioner to rebut the
state court's factual findings "by clear and convincing
evidence." *See Burt v. Titlow*, 571 U.S. ---, ---, 134 S.
Ct. 10, 15, 187 L.Ed.2d 348 (2013); *accord Brumfield
v. Cain*, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192
L.Ed.2d 356 (2015). Whatever that "precise
relationship" may be, "'a state-court factual
determination is not unreasonable merely because the
federal habeas court would have reached a different
conclusion in the first instance.'" *Titlow*, 571 U.S. at --
-, 134 S. Ct. at 15 (quoting *Wood v. Allen*, 558 U.S. 290,
301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

*Tharpe v. Warden*, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential
review under § 2254(d) generally is limited to the record that was before the
state court that adjudicated the claim on the merits. *See Cullen v. Pinholster*,
563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an
examination of the state-court decision at the time it was made").

4

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" *Tharpe*, 834 F.3d at 1338 (quoting *Richter*, 562 U.S. at 102–03). This standard is "meant to be" a "difficult" one to meet. *Richter*, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (per curiam) (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003), and *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [*Strickland*,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range"

5

of reasonable professional assistance. *Id.*, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*, at 687, 104 S. Ct. 2052.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.*, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*, at 687, 104 S. Ct. 2052.

*Richter*, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the *Strickland* test before the other." *Ward*, 592 F.3d at 1163. Since both prongs of the two-part *Strickland* test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." *Id.* (citing *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in *Strickland*: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." *Richter*, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Id.* (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied *Strickland*'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. *Richter*, 562 U.S. at ---, 131 S. Ct. at 788.

*Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014); *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by *Strickland*, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." *Rutherford v. Crosby*, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

7

### III. Factual and Procedural History

These facts are taken from Petitioner's initial brief filed on direct appeal:

> Mr. West was charged by two-count amended information with armed burglary with assault or battery (count I), and with violation of an injunction for protection against domestic violence (count II). The date of the alleged offenses was May 21, 2015.

> On September 28, 2015, the State filed its first Notice of Other Crimes, Wrongs or Acts Evidence, advising Mr. West that it intended to introduce evidence that: on or between the days of May 4, 2015 to May 15, 2015, Mr. West struck the alleged victim with his fist; the alleged victim did not go the hospital nor contact law enforcement because Mr. West threatened that he would kill her if she contacted the police; and that the alleged victim "kicked the Defendant out of her home" due to the incident. Defense counsel filed a motion to exclude the evidence. A hearing was scheduled on the matter. At the scheduled hearing, the State clarified its position and stated that the proposed *Williams Rule* evidence would only be relevant as rebuttal evidence or in response to a defense line of questioning. The State requested that the hearing be cancelled and that the matter be addressed at trial if it became necessary. The defense agreed that the issue could be addressed at trial, but did not agree that the evidence would ever be relevant or admissible at the trial. Further hearing on the issue was cancelled at that time.

> The State also filed four motions in limine. Defense counsel stated he had no objection to motions 1, 2, and 4, and the parties reached [an] agreement as to the State's motion in limine 3.

> The case proceeded to trial, and the jury was chosen without objection.

The first witness called by the State was Mary Cave. Cave, 54-years-old, testified that her address was 5945 Joy Drive South, and that she had lived at that address for five years. In May, 2015, Cave had three dogs - a Pitbull Great Dane, a German Shepard, and a German Shepard mix. Her backyard had a fence around the perimeter.

Cave testified that she had known Mr. West for ten years, and that they began dating in August, 2014. She and Mr. West lived together in her house until she asked West to leave on May 6, 2015. West took all of his clothing but left various items in the house, and left a toolbox in the driveway under the carport. West referred to the tool box as a "gang box." Four days after West moved out, Cave changed the locks to her home, and did not give West permission to come back inside her residence. Three or four times after he moved out, Mr. West came to get tools out of his gang box.

According to Cave's testimony, on the afternoon of May 21, 2015, her dogs drew her attention to the front door of her house. When Cave looked out of the window, she saw West's motorcycle parked in the driveway, and she heard noises that sounded to her like the gang box being opened. Cave testified that she turned away from the window, and she then heard loud noises at the front door that sounded as if the door was being broken down. Cave grabbed her revolver off of the table and ran through the laundry room and out the back door, taking her dogs with her. Cave testified that she removed cinderblocks away from a hole in the fence, and let the dogs go through the fence. She could not go through the fence using the gate near the door because she claimed there were cinderblocks in front of the gate, in the driveway. She did not call "911."

Cave testified that she "guesstimate[d]" she was in the back yard a few minutes before she saw West on the side porch. She said "please stop," but West came off of the porch towards her. Cave pointed the gun at

West, and fired. West did not stop but grabbed her from behind and tried to get the gun from her. Cave testified that West threw her on the ground and that they struggled over the gun for five or ten minutes. West got the gun away from Cave, and Cave testified he threatened to kill her if she called the police. West then went through the gate, and Cave continued to sit where she was. She testified she received scrapes on her elbow and knee from landing on the pavers when she fell. Cave did not call the police, but her neighbor Mr. Thigpen did so.

Cave testified that when she later looked at the front of her house, there was damage to the front door, and a broken window next to the front door. An ax[e] that did not belong to Cave, was on the ground in front of the window.

On cross examination, Cave admitted that West had left the backyard through a gate she said she was unable to go through because it was blocked with cinderblocks. She also testified that she did not hear Mr. West's motorcycle when he arrived at her house that day, nor when he left. Maybe five minutes after West left, Cave's neighbor Mr. Thigpen said her name and she realized he was outside.

**Ginny Burnside**, next door neighbor to Mary Cave, testified that on May 21, 2015, she heard and saw Mr. West's motorcycle as he pulled into Cave's driveway. West went toward the front of the house and Burnside heard "banging." Afterward, she heard Cave and West yelling in the back of the house. Burnside called "911" when she heard a gunshot; Cave continued screaming after the gunshot. Burnside testified that West walked down the driveway and she heard his motorcycle as he drove away. From the time West arrived to the time Burnside heard him driving away was between five and ten minutes. A recording of the "911" call was admitted into evidence and played for the jury.

10

**John Thigpenn** testified that he was the back neighbor of Cave's, and that their backyards shared a fence. On May 21, 2015, he heard what sounded like a gunshot from a small caliber firearm. Thigpenn went onto his back porch approximately 60 seconds after hearing the gun shot. He did not see Cave or West at that time, but Thigpenn called out Cave's name two times and, after she replied, he asked if she was okay and whether what he heard was a gunshot. Cave replied that it was a gunshot. After getting Cave's permission, Thigpenn called "911." Thigpenn was not sure where Cave was, but it sounded like she spoke to him from inside her house. He thought she was trapped in her house. It was not long after Thigpenn heard the gunshot that he saw West drive away on his motorcycle.

On cross-examination, Thigpenn testified that he had never seen Cave's dogs come through the hole in his fence, nor did he see them come through the hole on the day of the incident.

**Mark Flores**, with the Jacksonville Sheriff's Office, was dispatched to the scene and found Ms. Cave in front of her house. He questioned Cave about what had occurred, and also looked around her house, and spoke with her neighbors. Flores noted in his report that Cave was using alcohol. The front window of Cave's house was broken, and there appeared to be ax[e] marks on the front door. There was an ax[e] located on the ground under the window. Flores asked for a crime scene detective to further process the scene, and that concluded his involvement in the case.

**Steven Keeling**, a crime scene detective with the Jacksonville Sheriff's Office, was called to process the scene in this case. Keeling noted that Cave had some swelling to her face, and some abrasions or scrapes to her right elbow. He photographed her injuries, and also took photographs of the house and

yard. Keeling noted and photographed damage of the deadbolt, the door knob, and the doorjamb, of the front door. He also photographed the broken window, glass inside the house which appeared to be from the window, and what appeared to be blood on the window sill. He collected a swab from the blood. Keeling also photographed and swabbed blood on the rear porch railing.

**Jennifer Brown**, crime laboratory analyst in the biology section of the Florida Department of Law Enforcement (FDLE). She received a buccal swab from West, and a swab from a windowsill in this case, and was asked to perform DNA testing of the items. Brown testified that the DNA from the blood on the windowsill was a match to West's DNA profile. On cross-examination, Brown admitted that she did not perform testing on any other items submitted for testing, including the swab from the ax[e] handle and the swab from the railing, even though the Sheriff's Office had requested that all items be tested. Brown made the decision that it was not necessary.

The State rested its case, and defense counsel moved for a judgment of acquittal, which was denied.

Defense counsel advised the trial court that Mr. West wanted to testify, and the State's position was that if West testified it would "open the door" to evidence of the injunction and to the *Williams* Rule evidence. Defense counsel objected to the State's argument, and advised the judge that West was not going to testify to anything that would "open the door," that West would testify only that he went over to Cave's house to get his tools, *not* that he was invited to Cave's house. He further argued that allowing evidence of the injunction and *Williams* Rule evidence would only amount to bad character evidence and evidence of guilt of another offense which led to the injunction, and was not relevant to proving the burglary charged in count I[]. The defense reminded

the court that count II charging the injunction had been bifurcated for trial to avoid prejudice to West. Defense counsel further argued that if the court accepted the State's position and allowed the injunction and *Williams* Rule evidence to be admitted if West testified only that he went over to Cave's house, then West would be denied his right to present a defense and denied his right to a fair trial.

West's testimony was proffered out of the presence of the jury: West testified that he went to Cave's residence because the gang box containing his tools was in the carport. Cave was on the porch on the other side of the fence, and the two of them began arguing. Cave said she was going to shoot herself and she went back into her house. West heard a gunshot and panicked; he took the ax[e] out of his gang box and used it to try and open the front door. He could not open the door and so [he] broke out the front window. Cave was standing by the window, pointing the gun at West. West got on his motorcycle and left.

The State maintained its earlier position that the testimony made evidence of the injunction admissible; the defense argued that evidence of the injunction was not probative in the burglary charge, and that admitting the evidence would be unduly prejudicial. The court ruled that the *Williams* Rule evidence would be admissible if West testified according to the proffer, but evidence of the injunction would not be admissible. Defense counsel argued that the *Williams* Rule evidence was not probative, was not similar, but was only offered to show bad character and propensity for violence on the part of West[ and e]ven if the *Williams* Rule evidence was somewhat relevant to prove intent, any probative value was substantially outweighed by prejudicial impact.

Cave's testimony was then proffered: Cave testified that around May 4, 2015, Mr. West pushed her from behind into a kitchen cabinet, causing her to

13

suffer injuries. She did not call the police, nor did she go to the hospital. Cave claimed that West threatened her to not call the police. It was because of this incident that Cave told West to move out of her house. The court ruled that if West testified according to the proffer, then the State would be allowed to present Cave's testimony on rebuttal. Defense counsel renewed his objection to the ruling.

**Appellant West** testified that he and Cave had been in a relationship and had lived together for two years prior to May, 2015. She did not work during this time. West was employed in a job which required him to work with tools that he owned. He kept his tools in a gang box, which is a "four by four by six" box with a locked lid. The tools inside the gang box had a combined value of approximately $40,000.

On the day of May 21, 2015, West drove his motorcycle to Cave's house, and walked towards his gang box. He saw Cave behind the fence on the porch. Cave and West spoke to each other, and Cave's speech was slurred and she was argumentative. They began yelling at each other, and Cave eventually went into her house.

When defense counsel asked West if Cave said anything prior to going inside, the State objected that the question called for hearsay. Defense counsel argued that it was not hearsay as it was not being offered to prove the truth of the matter asserted, that it was offered to show the [e]ffect on West and why he did what he did afterward. The court sustained the State's objection.

West's testimony continued: Prior to Cave going inside her house, something caused West to become alarmed. After Cave went inside, West heard a gunshot from inside the house, and thought that Cave had shot herself. He panicked and grabbed the ax[e] out of his gang box, and tried to open the locked front

door using the ax[e]. When he could not open the front door, West used the ax to break the window. Cave was standing at the window, pointing the gun at West. West immediately got on his motorcycle and left.

During the State's cross-examination of West concerning letters he had written to Cave after his arrest, the following occurred:

Q [the prosecutor] And you remember writing her [Cave] and telling her to tell the police, tell at her deposition, and tell the State that, in fact, you were invited over to the house, is that correct?

A [Appellant West] Yes, I was invited.

Q You were invited May 21, 2015, sir?

A I had been going there to get my tools for the job at Fed-Ex for two weeks and then bringing them back.

The State argued that West's testimony opened the door to evidence of the injunction. Over defense objection, the court ruled evidence of the injunction could be admitted. The State then questioned Mr. West about the injunction in place which prevented him from coming within 500 feet of Cave's residence, and asked him if he directly defied the order, to which West tried to explain that Cave had allowed him to come over to get his tools so that he could work.

The defense rested its case.

Prior to the State presenting its rebuttal case, defense counsel moved for a mistrial based on the court requiring West to walk up to the witness stand in the presence of the jury, wearing a leg brace which kept his knee in a locked position. The defense argued that the affected walk was prejudicial. The court denied the motion, finding that it was not prejudicial.

Over defense renewed objection, the State presented the testimony of **Mary Cave** on rebuttal. Cave testified that on May 4, 2015, while she was still in a relationship with Mr. West, he pushed her into a kitchen cabinet, causing her to "split [her] head open." Cave further testified that West told her that if she called the police it would be the worst thing she could do. She did not call the police. Afterward, she kicked West out of the house and obtained an injunction to prevent him from coming back to her house.

During its closing and rebuttal closing argument, the prosecutor repeatedly argued evidence of the injunction, and argued that nothing, not even a court order, was going to keep West from going onto Cave's property.

The jury was instructed without objection. After the jury retired to deliberate, Mr. West entered a plea to count II, the charge of violation of an injunction.

The jury found Mr. West guilty of burglary, with specific findings that the structure was a dwelling, that West committed an assault or battery during the offense, and that he was armed or armed himself with a deadly weapon during the course of committing the offense. The jury specifically found that West did not actually possess a firearm during the commission of the offense.

Mr. West filed a pro se motion for new trial, which included complaints about his attorney's performance. West filed an addition to his motion for new trial, and included a copy of a letter he had written to his trial attorney complaining about his representation. Prior to sentencing, Mr. West filed a pro se amended motion to withdraw his plea to the violation of injunction charge, and included an unequivocal request to discharge his trial counsel. Mr. West also wrote a letter to the trial judge complaining of his attorney's performance.

16

At the hearing on January 28, 2016, the State brought to the court's attention West's request to discharge counsel which he included in his pro se motion to withdraw plea. The State asked the court to determine whether West wanted to discharge his counsel at that time. Mr. West stated, "Yes, Your Honor, I do." A sidebar discussion was had between the court, defense counsel, and the State, without the presence of the court reporter. Afterward, the record notes that a discussion was had between West and his defense attorneys, after which defense counsel requested to approach the court, and another off-the-record sidebar discussion was had. Defense counsel then advised the court that he was not adopting any motions filed by Mr. West at that time, but was making an oral motion to allow Mr. West to withdraw his plea to count 2 of the information, the violation of the injunction. With no objection by the State, the trial court granted the motion to withdraw plea to count 2 of the information. Afterward, the State entered a nol-pros to count 2.

With no further discussion of Mr. West's pro se motions, his request to discharge counsel, or his letters to the judge, the court denied the motion for new trial filed by defense counsel, and the case proceeded to sentencing. The court adjudicated Mr. West guilty of armed burglary with assault or battery, and sentenced him to 15-years incarceration, to be followed by 2-years probation for West to complete the Phoenix House residential treatment program.

Resp. Ex. 13 (record citations omitted).

## IV. The Petition

### a. Ground One

Petitioner argues that his trial counsel was ineffective for failing to file a "motion for arrest of judgment and motion for new trial" on the theory that the verdict form was inconsistent with the Information as the Information did not charge Petitioner with the offense for which he was found guilty. Doc. 1 at 5. Specifically, Petitioner contends count one of the Information charged him with armed burglary with a firearm, but the jury found Petitioner guilty of armed burglary while also finding he did not possess a firearm during the offense, which he argues is logically inconsistent. Doc. 18 at 25.

Petitioner raised this claim in his Florida Rule of Criminal Procedure 3.850 motion filed in state court. Resp. Ex. 19 at 2. The trial court summarily denied the claim as follows:

> In Ground One, Defendant alleges counsel was ineffective for failing to object to the verdict form. Specifically, Defendant complains counsel was deficient because the verdict form allowed the jury to find that Defendant armed himself with a "dangerous weapon or a firearm" but the information only alleged a firearm. Defendant claims prejudice because the jury found that he did not possess a firearm during the commission of the offense while also finding that he armed himself with a dangerous weapon during the commission of the offense.

18

The State charged Defendant as follows:

TODD CURTIS WEST on May 21, 2015, in the County of Duval and the State of Florida, did unlawfully enter or remain in a structure or conveyance, to wit: a dwelling, the property of M.A.C., with the intent to commit an offense therein, and while in the course of the burglary was or became armed with explosives or a dangerous weapon, to wit: firearm, within said dwelling, and/or made an assault or battery upon another, to-wit: M.A.C., and during the commission of the burglary the said TODD CURTIS WEST did actually possess a firearm, contrary to the provisions of Sections 810,02(2)(a), 810.02(2)(b) and 775.087(2)(a)1, Florida Statutes.

This information is legally sufficient because it "tracked the language of the statute, clearly charged the essential elements of the crime, and sufficiently advised [Defendant] of the specific crime with which he was charged." *Price v. State*, 995 So. 2d 401, 405 (Fla. 2008). Use of a weapon during a burglary is a sentencing enhancement, *Aroche v. State*, 993 So. 2d 568, 569 (Fla. 3d DCA 2008), so any technical defect in the information was cured by evidence that Defendant armed himself with an axe during the burglary. *See Robinson v. State*, 215 So. 3d 1262, 1266-74 (Fla. 1st DCA 2017) ("Here, any defect in the charging document, namely failure to allege 'great bodily harm' as opposed to 'bodily harm' was cured by the victim's testimony at trial and the jury verdict.")[.] Even if counsel had successfully objected to the verdict form based upon the information, the State would have been able to amend the information to cure the defect. *Lenoir v. State*, 804 So. 2d 507, 508-09 (Fla. 3d DCA 2001). Thus, Defendant cannot demonstrate prejudice because any objection would have led to the same

> result – a conviction on the merits. *Williams v. State*,
> 182 So. 3d 11, 16 (Fla. 3d DCA 2015). And, because
> there is record support for the jury's findings, his
> sentence is not illegal.
>
> Defendant was only convicted on armed
> burglary, so there cannot be a double jeopardy
> violation. Accordingly, he is not entitled to relief on
> Ground One.

Resp. Ex. 21 at 2 (record citations omitted). Petitioner appealed the trial court's denial, and the First District Court of Appeal per curiam affirmed the order without a written opinion. Resp. Ex. 24.

The Court addresses the claim under the deferential standard for federal court review of state court adjudications. In doing so, the Court notes that inconsistent verdicts are not in and of themselves proof of a constitutional violation. *See United States v. Mitchell*, 146 F.3d 1338, 1344 (11th Cir. 1998) (concluding that "as long as the guilty verdict is supported by sufficient evidence, it must stand, even in the face of an inconsistent verdict on another count"). Here, sufficient evidence supported the jury's verdict. Indeed, at trial, the evidence showed Petitioner used an axe to force his way into the surrounding curtilage of the victim's home before he physically attacked her. The trial court instructed the jury that if it found Petitioner guilty of burglary, "it must also determine whether in the course of committing the burglary, [Petitioner] was armed or armed himself within the structure with a dangerous weapon"; and defined a dangerous weapon as "any weapon that taking into

20

account the manner in which it is used, is likely to produce death or great bodily harm." Resp. Ex. 7 at 95. It then instructed that "arm[ing] oneself during the course of a burglary include[d] possessing a firearm," and that if the jury found the state proved beyond a reasonable doubt that during the offense Petitioner actually possessed a firearm, it should make that specific finding as well. *Id.* Considering the evidence and the instructions, the jury could have chosen to believe the axe constituted a dangerous weapon used during the burglary while also believing Petitioner did not arm himself with a firearm during the offense. Thus, Petitioner cannot show that but for counsel's alleged error, the outcome of his case would have been different.

Consequently, upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of *Strickland*, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. This claim is denied.

### b. Ground Two

Petitioner asserts his trial counsel was ineffective for failing to establish Petitioner's entitlement to an acquittal on the armed burglary charge because the state failed to prove he armed himself with a dangerous weapon or a firearm. Doc. 1 at 6.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. 19 at 5.

The trial court summarily denied the claim, finding as follows:

> In Ground Two, Defendant alleges counsel was ineffective for failing to argue that there was no evidence that Defendant armed himself with a firearm or axe. In resolving Ground One, this Court addressed the State's evidence regarding the axe. In sum, the victim's front door had been damaged by an axe, and the door had not been damaged before Defendant's arrival. Thus, in the light most favorable to the State there was sufficient evidence that Defendant possessed an axe. *Lynch v. State*, 293 So. 2d 44, 45-46 (Fla. 1974) (citations omitted). Accordingly, Defendant is not entitled to relief on Ground Two.

Resp. Ex. 21 at 3 (record citations omitted). Petitioner appealed the trial court's denial. Resp. Ex. 22. Respondents erroneously argue that Petitioner failed to exhaust this claim because when briefing his issues on appeal, Petitioner failed to discuss this claim. Resp. at 44. But relying on the persuasive authority in *Cortes*, the Court declines to find this claim, or any other claim not discussed in Petitioner's postconviction appeal brief, unexhausted, because "a petitioner who does file a brief in an appeal of the summary denial of a Rule 3.850 motion does not waive any issues not addressed in the brief."[1] *Cortes v. Gladish*, 216 F. App'x 897 (11th Cir. 2007); *see also* Fla. R. App. P. 9.141 (briefs are not required upon summary denial of postconviction motions); *Darity v. Sec'y, Dep't*

---

[1] Respondents also argue that Grounds Seven, Eight, Nine, Ten, and "A-One" are unexhausted because Petitioner did not discuss those claims in his postconviction appeal. Resp. at 60. But as explained in the Court's analysis of Ground Two, the Court declines to find those claims unexhausted.

*of Corr.*, 244 F. App'x 982, 984 (11th Cir. 2007) (opining a defendant who chooses to file a brief upon summary denial of his postconviction motion is not required to raise all claims).[2] Thus, because Petitioner appealed, and First DCA per curiam affirmed the trial court's summary denial without a written opinion, Resp. Ex. 24, the claim is exhausted and properly before the Court.

To that end, the Court addresses the claim under the deferential standard for federal court review of state court adjudications. And for the reasons discussed in Ground One, upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of *Strickland*, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. This claim is denied.

### c. Ground Three

Petitioner argues that his trial counsel was ineffective for failing to investigate and present exculpatory evidence of 911 calls that refute the timeline of the alleged burglary. Doc. 1 at 8.

---

[2] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. *See McNamara v. GEICO*, 30 F.4th 1055, 1060-61 (11th Cir. 2022); *see generally* Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. 19 at 7.

The trial court summarily denied the claim as follows:

> In Ground Three, Defendant alleges counsel was ineffective for failing to present exculpatory evidence. Specifically Defendant argues counsel was deficient because the timing of 911 calls showed he was only at the victim's home for less than a minute. Defendant claims prejudice because this evidence would have rebutted the State's timeline.
>
> Defendant['s] argument is based upon the testimony of two neighbors who called 911. Both heard an argument, followed by a gunshot, followed by a motorcycle driving away. One heard an argument and saw Defendant before the gunshot; the other only became aware of the argument after hearing the gunshot.
>
> Defendant's claim fails because neither 911 call established a timeline for the entire altercation between Defendant and the victim; the calls only established a timeline for what happened after the gunshot had been fired. Both Defendant and the victim did testify, and their testimony put Defendant at the victim's house for far more than a minute. The victim testified that she saw Defendant's motorcycle and heard him going through his gang box. She grabbed her revolver after hearing a loud sound from her front door, and she went out to the backyard. Defendant confronted her a few minutes later, and she fired when he charged her. They wrestled for the gun for approximately "five to ten minutes," until Defendant took it from her. Defendant threatened her then left through the gate. Later, she saw that a window had been broken and her front door had been damaged. Neither had been damaged before Defendant came over.

24

Defendant testified that he rode his motorcycle to the victim's home. She was in the backyard, and she seemed drunk. They argued, she went inside, and then he heard a gunshot. He grabbed an axe out of his gang box, went to the front door, and "chopped the doorknob off." He still could not get inside, so he ran to a window and broke it. He saw the victim standing inside with a gun, and she was aiming it at him. He got onto his motorcycle and left.

Other than her statement about wrestling with the gun for "five to ten minutes," the 911 calls were in no way inconsistent with the victim's testimony. Further, Defendant's own testimony put him at the scene for longer than a minute *after the shooting* because he had time to go to his gang box, chop at the front door, and then break a window. Thus, there is no reasonable possibility the ultimate outcome of Defendant's case would have been different had counsel investigated and presented "the actual time of the 911 calls." Accordingly, Defendant is not entitled to relief on Ground Three.

Resp. Ex. 21 at 2 (record citations omitted). Petitioner appealed the trial court's denial, and the First DCA per curiam affirmed the order without a written opinion. Resp. Ex. 24.

The Court addresses the claim under the deferential standard for federal court review of state court adjudications. And upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of *Strickland*, and it was not based on an unreasonable

determination of the facts given the evidence presented to the state court. This claim is denied.

### d. Ground Four

Petitioner alleges his trial counsel was ineffective for failing to call several witnesses during trial. Doc. 1 at 10.

Petitioner raised this claim in this Rule 3.850 motion. Resp. Ex. 19 at 9. The trial court summarily denied the claim, finding as follows:

> First, Defendant alleges counsel should have called Jerry Garett and Lynn Thomas. They would have testified that Defendant never moved out of the house he shared with the victim; he was house-sitting while they took a vacation, was overseeing pool construction at their home, and taking care of their dog. The victim had previously accused Lynn and Defendant of having an affair while on vacation. Defendant argues this testimony would have established the victim's state of mind and bias against Defendant.

> Other than the victim's allegations about Defendant having an affair, none of Garett or Thomas's testimony would have been admissible or relevant. *See generally* § 90.608, Fla. Stat. (2015); *see also Pintado v. State*, 970 So. 2d 857, 859-60 (Fla. 3d DCA 2007) ("Here, the defense sought to call witnesses to impeach the victim on collateral matters such as drug use. The trial court did not abuse its discretion by prohibiting this improper impeachment." (citing *Ruland v. State*, 614 So. 2d 537 (Fla. 3d DCA 1993))[]. And, while any prior allegations of infidelity may have been relevant as to bias, *Gibson v. State*, 661 So. 2d 288, 291 (Fla. 1995), there is no reasonable possibility the outcome of Defendant's trial would have been different had counsel introduced this evidence. Both of

the witnesses who called 911 testified that Defendant left immediately after the gunshot had been fired, and one spoke to the victim as she lay in her backyard. Their testimony corroborated the victim's version of events while rebutting Defendant[']s, and it was already clear from the victim's testimony that she had an acrimonious split with Defendant.

Second, Defendant alleges counsel failed to obtain transcripts of depositions with police officers. These depositions showed that Defendant never moved out of the residence. As will be addressed in Ground Eight, whether or not Defendant moved out of the residence had no legal bearing on the case. Further, Defendant fails to allege what specific testimony the officers gave in their depositions and what their testimony would have been at trial. Thus, his claim is insufficient. *See Howard v. State*, 17 So. 3d 774, 776 (Fla. 2d DCA 2009). Because he has already been granted leave to amend, he is not entitled to relief. *Thompson v. State*, 44 Fla. L. Weekly D1012 (Fla. 1st DCA April 22, 2019).

Third, Defendant alleges counsel should have called David Smith, the victim's backyard neighbor. Smith would have testified that the victim's dogs loved Defendant and played with him. This would have impeached the victim's statement that Defendant did not play with the dogs. Smith would have also testified that there was a four-foot hog wire fence between the yards and he had seen the victim step over the fence. This would have shown that the victim was not trapped in her backyard by Defendant. Joshua West and Shelby West would have given similar testimony regarding the dogs. This impeachment would have involved collateral matters, so it was not admissible. *Pintado*, 970 So. 2d at 859-60. Whether or not the victim was trapped in her backyard had no bearing on the charges, so counsel was not ineffective for failing to call Smith as a witness.

> Fourth, Defendant alleges counsel should have called Joshua West and Matt Krauer to testify about a prior incident between Defendant and the victim when she had shot him in the hand. This would have impeached the victim's claims about her kicking Defendant out and would instead have established that Defendant broke up with her. Again, this would have involved impeachment on a collateral matter. *Id.* Accordingly, Defendant is not entitled to relief on Ground Four.

Resp. Ex. 21 at 5-7 (record citations omitted). Petitioner appealed the trial court's denial, and the First DCA per curiam affirmed the order without a written opinion. Resp. Ex. 24.

The Court addresses the claim under the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of *Strickland*, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. This claim is denied.

### e. Ground Five

Petitioner alleges his trial counsel was ineffective for failing to object to the state's questioning of Burnside and for failing to impeach Burnside with statements she made during her 911 call. Doc. 1 at 11; Doc. 18 at 36.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. 19 at 15. The trial court summarily denied the claim as follows:

28

In Ground Five, Defendant alleges counsel was ineffective for failing to object. Specifically, Defendant alleges counsel was deficient for failing to object to leading questions from the state. Defendant claims prejudice because the objection would have prevented the State from bolstering the victim's testimony.

The gist of Defendant's claim is that counsel should have impeached one of the 911 callers with inconsistencies and/or fabrications between her trial testimony and the call itself. However, because the jury heard both the 911 call and the victim's testimony, there is no reasonable possibility the outcome of Defendant's trial would have been different had counsel focused more questions on these matters.

As to Defendant's claim that the trial transcripts were doctored, Defendant has failed to allege or demonstrate prejudice. The order of evidence and the examination of witnesses is a discretionary matter with no effect on the substance of testimony. *Brown v. State*, 25 So. 63, 65 (Fla. 1898). Accordingly, Defendant is not entitled to relief on Ground Five.

Resp. Ex. 21 at 7 (record citations omitted). Petitioner appealed the trial court's denial, and the First DCA per curiam affirmed the order without a written opinion. Resp. Ex. 24.

The Court addresses the claim under the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of *Strickland,* and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. Also, to the extent that

Petitioner attempts to raise, for the first time, a *Giglio* claim in his reply brief, arguments raised for the first time in a reply brief are not properly before a reviewing court. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) (citations omitted). Thus, any such *Giglio* claim will not be addressed. Ground Five is denied.

### f. Ground Six

Petitioner asserts his trial counsel was ineffective for failing to investigate and discredit the state's evidence that DNA from blood found at the scene matched Petitioner. Doc. 1 at 11; Doc. 18 at 38.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. 19 at 18. The trial court denied the claim as follows:

> In Ground Six, Defendant alleges counsel was ineffective for not challenging the State's DNA evidence. Specifically, Defendant argues counsel was deficient because Defendant informed counsel that his DNA was not present. Defendant claims prejudice because this false evidence contributed to his conviction.
>
> Jennifer Brown, a qualified expert on DNA matters employed by the Florida Department of Law Enforcement, testified that blood found on the windowsill matched DNA taken from Defendant's buccal swab. Because investigators relied upon a buccal swab, it is irrelevant whether or not they ever took Defendant's blood. Further, Defendant took the stand and admitted to picking up the axe and chopping away at the victim's front door. Thus, even if his DNA was not on it, he admitted to possessing it.

> Accordingly, counsel was not ineffective and
> Defendant is not entitled to relief on Ground Six.

Resp. Ex. 21 at 7 (record citations omitted). Petitioner appealed the trial court's denial, and the First DCA per curiam affirmed the order without a written opinion. Resp. Ex. 24.

The Court addresses the claim under the deferential standard for federal court review of state court adjudications. In doing so, the Court defers to the state court's finding that a challenge to the DNA evidence would have been irrelevant considering Petitioner testified that he was at the victim's home during the incident and attempted to break the window using an axe. Resp. Ex. 7 at 21. Petitioner also testified that he cut his hand on the broken glass when he climbed through the window. *Id.* As such, upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of *Strickland*, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. This claim is denied.

### f. Ground Seven

Petitioner argues that his trial counsel was ineffective for allowing the state to access confidential information, which required Petitioner to take the stand, allowing the state to present *Williams* Rule evidence and letting the

jury to see him in leg restraints. Doc. 1 at 12; Doc. 18 at 49; Resp. Ex. 19 at 21-29.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. 19 at 21. The trial court summarily denied the claim as follows:

> In Ground Seven, Defendant alleges counsel was ineffective for allowing the State to access confidential information. Specifically, Defendant argues counsel was deficient because the State had access to a map of the victim's backyard as well as letters exchanged between Defendant and counsel. Defendant claims prejudice because this required him to take the stand, allowing the State to introduce *Williams* evidence.
>
> After counsel announced Defendant would be taking the stand, the State argued that his testimony would open the door to evidence that an injunction had been entered against him barring him from being on the victim's property. The State also argued that prior acts of domestic violence committed by Defendant would be admissible if he took the stand, and this Court agreed. This Court also ruled that Count One would remain bifurcated from Count Two. While cross-examining Defendant, the State relied upon letters written by Defendant to the victim, not letters written by Defendant to counsel.
>
> As for the *Williams* evidence, it was this Court's actions, not counsel's, that led to its admission. A defendant may not backdoor claims of trial court error through a claim of ineffective assistance of counsel. *See Dowling v. State*, 796 So. 2d 1195, 1195-96 (Fla. 4th DCA 2001). Further, as this Court has already noted, Defendant took the stand and admitted to going to the victim's home. This Court did not let the jury hear evidence about the injunction until Defendant claimed he had permission to be on the premises. As will be addressed in Ground Eight, counsel could not

overwhelming evidence establishing Petitioner committed the offense, Petitioner has not shown a reasonable probability that without the jury seeing his leg restraint, it would not have found him guilty. *See, e.g., Hughlon v. Florida*, No. 21-14001, 2022 WL 17494866, at *4 (11th Cir. 2022) (explaining "the petitioner was required to show a reasonable probability that, without being visibly shack[l]ed, the jury would not have convicted him and [ ] he [ ] failed to meet that standard because the evidence against him was 'overwhelming'")

Thus, upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim in ground seven of his Rule 3.850 motion was neither contrary to nor an unreasonable application of *Strickland*, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. Ground Seven is denied.

### g. Ground Eight

Petitioner alleges his trial counsel was ineffective for failing to ensure the jury understood that he had not moved out of the home he shared with the victim, he had a superior possessory interest, and he paid the bills. Doc. 1 at 12.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. 19 at 29. The trial court summarily denied the claim as follows:

In Ground Eight, Defendant alleges counsel was ineffective for failing to make sure the jury knew Defendant had not moved out of the home. Specifically, Defendant argues counsel was deficient because the injunction was obtained under false pretenses. Defendant claims prejudice because a person cannot burgle their own home.

Defendant is not entitled to relief because his claim fails as a matter of law:

> [ ] Whether a husband who has shared a house with his wife but is retrained by court order form entering the property can be charged with burglary when he enters the premises with intent to commit a crime.
>
> . . . [.]
>
> The most relevant case in Florida is *Cladd v. State*, 398 So. 2d 442 (Fla. 1981). In *Cladd* the court held that a defendant could be guilty of burglary of his estranged wife's apartment when the defendant was physically but not legally separated from his wife and entered an apartment possessed only by the wife in which he had no ownership or possessory interest. The trial judge in the instant case distinguished *Cladd* because the wife in *Cladd* was in the sole possession of the premises.
>
> There are some cases from other jurisdictions which are instructive. In *Matthews v. Commonwealth*, 709 S.W.2d 414 (Ky. 1985), *cert. denied*, 479 U.S. 871, 107 S. Ct. 245, 93 L.Ed.2d 170 (1986), Matthews and his wife had rented a house from the wife's brother. The house was to

35

be used as the marital residence when the parties were not separated. There, however, were repeated periods of separation. When the parties separated, Matthews lived with his mother. In the five weeks prior to the murders, the wife had procured two separate warrants against Matthews. Matthews had been arrested on the first warrant and released under a court order forbidding him further contact with the wife. Matthews entered the house and murdered his wife and stepdaughter. The court held that Matthews could be found guilty of burglary because he invaded the possessory property right of another. Likewise, the majority of cases have recognized that a spouse who has a legal interest in the property but not a current possessory interest can be charged with burglary. A court order can negate a person's right to enter the premises even if that person owns the premises.

[. . . .]

*State v. Suarez-Mesa*, 662 So. 2d 735, 736 (Fla. 2d DCA 1995) (citations omitted). Regardless of whether or not Defendant had moved out of the victim's home, he could not ignore the court order barring him from the premises. *Vizzi v. State*, 501 So. 2d 613, 618-19 (Fla. 3d DCA 1986). The issue was whether or not Defendant intended to commit a crime when he entered the victim's property; he did not have a legal right to be there, nor was he invited. *E.g.*, *Faulk v. State*, 222 So. 3d 621, 622-24 (Fla. 1st DCA 2017). Accordingly, counsel was not ineffective, and Defendant is not entitled to relief on Ground Eight.

36

Resp. Ex. 21 at 9-10 (record citations omitted). Petitioner appealed the trial court's denial, Resp. Ex. 22, and First DCA per curiam affirmed the summary denial without a written opinion, Resp. Ex. 24.

The Court addresses the claim under the deferential standard for federal court review of state court adjudications. Under Florida law, "burglary' [can] mean[] . . . [n]otwithstanding a licensed or invited entry, remaining in a dwelling, structure, or conveyance [a]fter permission to remain therein has been withdrawn, with the intent to commit an offense therein . . . ." § 810.02(1)(b)2b, Fla. Stat. Here, the victim testified that before the incident, she had kicked Petitioner out of the home; he removed all his belongings and clothing when he left; she changed the locks on the house; and she did not give Petitioner permission to come back inside her residence. Resp. Ex. 6 at 29-30. Petitioner testified that he had been "invited" to the house because he still had access to his tools; however, that testimony was impeached when the state elicited testimony from Petitioner that on the day of the incident, he knew the victim had an injunction prohibiting him from coming with 500 feet of the victim's residence. Resp. Ex. 7 at 20-25. Considering that evidence, Petitioner has not shown that but for counsel's alleged errors, the outcome of his trial would have been different.

Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither

contrary to nor an unreasonable application of *Strickland*, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. Ground Eight is denied.

### g. Ground Nine

Petitioner challenges "the court's negligen[c]e, indif[f]erence, and bias to judicial duty." Doc. 1 at 13.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. 19 at 32. The trial court denied the claim, finding as follows:

> In Ground Nine, Defendant alleges multiple instances of trial court error. His claims are not cognizable in a motion for postconviction relief. *Swanson v. State*, 984 So. 2d 629, 630 (Fla. 1st DCA 2008).

Resp. Ex. 21 at 10. Petitioner appealed the trial court's denial. Resp. Ex. 22. And the First DCA per curiam affirmed the summary denial without a written opinion. Resp. Ex. 24. As such, the Court addresses the claim under the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of clearly established federal law, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. Ground Nine is denied.

### h. Ground Ten

38

Petitioner alleges that he is entitled to a new trial based on the cumulative effect of the ineffective assistance of counsel, prosecutorial misconduct, and trial court error claims raised in Grounds One through Nine. Doc. 1 at 13.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. 19 at 38. The trial court denied the claim as follows:

> In Ground Ten, Defendant alleges cumulative error. "[W]here individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error must fail." *Griffin v. State*, 866 So. 2d 1, 22 (Fla. 2003) (citing *Downs v. State*, 740 So. 2d 506, 509 n.5 (Fla. 1999)).

Resp. Ex. 21 at 11. Petitioner appealed the trial court's denial, Resp. Ex. 22, and the First DCA per curiam affirmed the summary denial without a written opinion, Resp. Ex. 24.

As such, the Court addresses the claim under the deferential standard for federal court review of state court adjudications. "The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005) (internal quotation marks omitted). The Eleventh Circuit addresses "claims of cumulative error by first considering the validity of each claim individually, and then examining any

errors that [it] find[s] in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012). Because the Court has determined that none of Petitioner's individual claims of error or prejudice have merit, Petitioner's cumulative error claim cannot stand. *See United States v. Taylor*, 417 F.3d 1176, 1182 (11th Cir. 2005) ("[There being] no error in any of the district court's rulings, the argument that cumulative trial error requires that this Court reverse [the defendant's] convictions is without merit."). Accordingly, the Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner's claim of cumulative error is denied.

### i. Ground A – One

Petitioner argues that his trial counsel was ineffective for failing to investigate and adequately identify the defects in the Information. Doc. 1 at 14. According to Petitioner, the Information was defective because charging and convicting Petitioner with both armed burglary with assault or battery and violation of a domestic violence injunction violated his double jeopardy

rights, and bifurcating the counts but allowing the state to present evidence of the injunction highlighted this violation. *Id.*

Petitioner raised a version of this claim in ground seven of his Rule 3.850 motion. Resp. Ex. 19 at 27. Before the trial court issued his Rule 3.850 order, Petitioner again raised this claim in a filing titled "Asking for the Court's Leave for Addition to Amended Motion for Postconviction Relief," filed on May 22, 2019 (mailbox rule). Resp. Ex. 20 at 2. In the trial court's order, it explained it was summarily denying both Rule 3.850 motions, including the May 22, 2019 motion. Resp. Ex. 21 at 1, 11. In addressing the double jeopardy allegation, the trial court explained: "Defendant was only convicted on armed burglary, so there cannot be a double jeopardy violation." *Id.* at 3. Petitioner appealed the trial court's denial. Resp. Ex. 22, and the First DCA per curiam affirmed the summary denial without a written opinion, Resp. Ex. 24.

Petitioner again raised this claim in terms of ineffective assistance of appellate counsel in his Florida Rule of Appellate Procedure 9.141 petition filed with the First DCA. Resp. Ex. 25 at 2. The First DCA per curiam denied that petition on the merits. Resp. Ex. 26.

As such, the Court addresses the claim under the deferential standard for federal court review of state court adjudications. The Double Jeopardy Clause of the Fifth Amendment protects against: (1) a second prosecution for the same offense after an acquittal; (2) a second prosecution for the same

offense after a conviction; and (3) multiple punishments for the same offense. *Jones v. Sec'y, Dep't of Corr.*, 778 F. App'x 626, 634 (11th Cir. 2019) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). None of the circumstances establishing a double jeopardy violation are present here. The crime of aggravated burglary with assault or battery contains different elements than the crime of violating an injunction for protection against domestic violence, and Petitioner was only convicted of the aggravated burglary charge. Petitioner seems to believe that allowing evidence of the injunction to be presented as *Williams* Rule evidence amounted to a double jeopardy violation, but he is simply incorrect. Thus, the Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. This claim is denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED with prejudice**.

2.    The Clerk of Court shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

42

3.    If Petitioner appeals this dismissal, the Court denies a certificate of appealability.[3] Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this ⁴⁄₇ day of March, 2024.

UNITED STATES DISTRICT JUDGE

Jax-7

C:    Todd Curtis West, #303861
      Counsel of record

---

[3] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.